UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SUZANNE M. MORRISON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Case No.  1:14-CV-1059

HON. GORDON J. QUIST

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff, Suzanne Morrison, seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB)  under Title II of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits,

and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 48 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 18, 80.) She graduated from high school and was previously employed as a seamstress and short order cook. (Tr. 43, 71.) Plaintiff applied for benefits on January 5, 2011, alleging that she had been disabled since December 31, 2003, due to neuropathic pain, neck pain, and wedge deformity. (Tr. 80, 113–14.) Plaintiff's application was denied on May 17, 2011, after which time she requested a hearing before an ALJ. (Tr. 90–95.) On April 15, 2013, Plaintiff appeared with her counsel before ALJ Kevin Detherage with testimony being offered by Plaintiff

and a vocational expert (VE). (Tr. 39–79.) In a written decision dated May 21, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 18–38.) Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 6–10.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2008. (Tr. 23.) Accordingly, to be eligible for benefits, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Detherage determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 23.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) trigeminal neuralgia;[2] (2) internal hemorrhoids; and (3) abdominal/pelvic pain. (Tr. 23.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 23–24.) At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally stoop, kneel, crouch, or crawl. The claimant can never climb ladders, ropes, or scaffolds. She can climb ramps and stairs on no more than an occasional basis. The claimant must be allowed the option to sit and stand at will, provided that she is not off task more than nine-percent of the work period. She can only frequently (as opposed to constantly) handle and finger items with her bilateral upper extremities.

(Tr. 24.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. 33.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See*

---

[2] As Plaintiff points out, the ALJ initially misspelled this impairment as tritreminal neuralgia. (ECF No. 12, PageID.746.) Plaintiff, however, does not argue that this error prejudiced her in any way.

*Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 228,000 national jobs as a packager, clerk/inspector, and clerical assistant that an individual similar to Plaintiff could perform. (Tr. 72–73.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any point from the time of her alleged onset of disability through the date last insured. (Tr. 34.)

## DISCUSSION

Plaintiff's statement of errors argues substantial evidence does not support the ALJ's RFC determination for a number of reasons. Specifically, Plaintiff argues the ALJ erred in:

1. Using only conclusory language to support the RFC;

2. Failing to properly consider her non-severe impairments of back and neck pain in the RFC;

3. Failing to properly address her severe impairments in the RFC;

4. Failing to account for the side effects of her medication in the RFC;

5. Improperly discounting her credibility; and

6. Improperly rejecting medical opinions in the record.

(ECF No. 12, PageID.744.) The Court will consider the issues below.[3]

**1.**

Plaintiff first claims that the ALJ erred in his discussion of Plaintiff's RFC because

---

[3] The Court notes that Plaintiff's counsel has failed to follow the Court's notice of December 29, 2014, regarding page lengths for briefs. Counsel submitted a brief twenty-five pages in length, exceeding the Court's direction that "[i]nitial briefs may not exceed 20 pages without leave of court." (ECF No. 9, PageID.731.) Plaintiff's counsel should be aware that future briefs which exceed page limits without leave of court may be stricken.

the "RFC assessment is simply conclusory and does not contain any rationale or reference to supporting evidence" in violation of SSR 96-8p.[4] (ECF No. 12, PageID.745.) The Court disagrees.

RFC is the most, not the least, a claimant can do despite his impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is a determination made by the ALJ based upon all the evidence within the record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Social Security Ruling 96-8p requires that an RFC assessment include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996). Plaintiff claims that the ALJ's RFC discussion is conclusory because the "ALJ provides no rationale whatsoever for his RFC beyond a single sentence stating that 'in summary, the residual functional capacity assessment cited above is supported by the evidence of the record as a whole.'" (ECF No. 12, PageID.745 (citing Tr. 33.)) A review of the ALJ's decision, however, reveals that the discussion of Plaintiff's RFC is not at all conclusory. Rather, the ALJ devoted several pages of the decision to the RFC determination, and discussed not only Plaintiff's medical treatment records, but also Plaintiff's testimony and statements to the agency. (Tr. 24–33.)

While the ALJ's determination regarding the time Plaintiff would be off task could have been more fully explained, Plaintiff simply argues that the discussion was insufficient but points to no evidence that conflicts with the ALJ's RFC assessment, nor explains how she was prejudiced by the ALJ's failure to discuss the issue more thoroughly. (*See* ECF No. 12, PageID.746.) Thus, even if the ALJ's discussion was inadequate under SSR 96–8p, given that the ALJ's RFC is

---

[4]SSRs, or Social Security Rulings, "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

largely consistent with the record as a whole, any such error was harmless. *See Williams v. Astrue*, No. 0:09–1971–TLW–PJG, 2010 WL 6297625, at *5 (D.S.C. Nov. 3, 2010) (finding that, even assuming the ALJ failed to comply with the discussion requirements of SSR 96–8p, any such error was harmless).

**2.**

Plaintiff next contends that the RFC is deficient for failing to properly consider her non-severe impairments of back and neck pain. (ECF No. 12, PageID.747.) Plaintiff again points to SSR 96-8p in support. (*Id.*) The relevant portion of that ruling requires the ALJ to:

> consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may - when considered with limitations or restrictions due to other impairments-be critical to the outcome of a claim.

SSR 96-8p, 1996 WL 374184, at *5. Contrary to Plaintiff's assertion, the ALJ did not ignore Plaintiff's alleged back and neck pain. First of all, the ALJ stated that in determining the RFC, he "consider[ed] all of the claimant's impairments, including impairments that are not severe." (Tr. 22 (citing 20 C.F.R. §§ 404.1520(e) and .1545 and SSR 96-8p).) In similar contexts, the Sixth Circuit has found such statements sufficient to satisfy the regulations. *White v. Comm'r of Soc. Sec*. 572 F.3d 272, 287 (6th Cir. 2009). Moreover, as Plaintiff herself admits, the ALJ did discuss Plaintiff's complaints of back and neck pain, and noted that she had ended her physical therapy for that pain. (Tr. 25–26.) This was sufficient to satisfy SSR 96-8's direction that the ALJ consider Plaintiff's non-severe impairments. Accordingly, the Court finds no error.

**3.**

Plaintiff also argues that the ALJ's RFC discussion failed to address any limitations related to her severe impairments of trigeminal neuralgia and abdominal/pelvic pain. (ECF No. 12,

PageID.749–51.)  Whether a claimant has a "severe impairment" is determined at step two of the sequential evaluation, and is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  A claimant's RFC is determined at step four of the sequential evaluation.  *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  20 C.F.R. § 404.1545.  It is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

"A claimant's severe impairment may or may not affect his or her functional capacity to do work."  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).  This is because "[t]he regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms." *Id.* citing 20 C.F.R. § 404.1545(e).  *See, e.g., West v. Colvin*, No. 5:14–69–KKC, 2014 WL 7177925 at *4 (E.D. Ky. Dec. 6, 2014) ("The ALJ is not required to incorporate all 'severe impairments' in her RFC assessment").

The ALJ thoroughly discussed Plaintiff's trigeminal neuralgia and complaints of abdominal pain throughout his decision.  (Tr. 28–33.)  The ALJ noted, for example, that prior to Plaintiff's date last insured, examining physicians found Plaintiff's facial pain to be atypical and wondered if it was related to family stress.  (Tr. 28.)  This was similar to the later conclusion of Dr. Matthew Lorincz, who found the pain consistent with characteristics of trigeminal neuralgia and

prescribed medication. (Tr. 562.) On April 2, 2010, Dr. Kenneth Casey opined that Plaintiff was stable under medication. (Tr. 261.) In short, the ALJ noted that Plaintiff's doctors connected Plaintiff's facial pain to a diagnosis of trigeminal neuralgia, but found it stabilized under medication.

As to Plaintiff's abdominal pain, the ALJ noted that Plaintiff underwent a combination hysterectomy and oophorectomy in January 2005, but that she had no significant complaints of abdominal pain until after her date last insured. (Tr. 32.) An imaging study of Plaintiff's abdomen on November 6, 2008, revealed no acute process. (Tr. 518). Thereafter, Plaintiff's complaints of abdominal pain were treated with medication and a laparoscopic cholecystectomy. (Tr. 28–29 (citing Tr. 510–11).) Plaintiff also underwent some physical therapy for the pain, but reported only "mild" compliance and ultimately ended her therapy due to a lack of communication with her therapists. (Tr. 29 (citing Tr. 491).) Based on this record, substantial evidence supports the ALJ's RFC. This determination accounted for the functional limitations caused by Plaintiff's severe impairments of trigeminal neuralgia and abdominal pain. Accordingly, Plaintiff's claim of error will be denied.

**4.**

Next, Plaintiff contends that the ALJ failed to discuss the side effects she experienced from her medications. (ECF No. 12, PageID.751.) The record demonstrates that by Plaintiff's date last insured, her medications included Flexeril, Darvocet, Norco, and MS Contin. (Tr. 291, 465.) At the administrative hearing, Plaintiff testified that the medications affected her ability to concentrate and that they made her feel tired and groggy. (Tr. 62, 67.)

Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where a claimant testified that she suffered from dizziness and drowsiness as a result of her medications, the

9

ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Sec'y of Health & Human Servs.*, No. 91–1925, 1992 WL 174540, at *3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's side-effects must be supported by objective medical evidence"). In support of her claim, Plaintiff presents notations in the record showing that when she discontinued her Flexeril she was less fatigued, and that her constipation was related to her narcotic painkillers. (Tr. 637, 465.)

Contrary to Plaintiff's contentions, however, the ALJ properly evaluated these side effects. The ALJ expressly noted Plaintiff's testimony regarding her side effects, but nonetheless concluded noted that the medication allowed Plaintiff to continue her home business and other extensive activities of daily living. (Tr. 25, 31 (citing Tr. 679).) Moreover, Plaintiff fails to identify any functional limitations that are caused by these side effects which are inconsistent with the RFC the ALJ adopted. Accordingly, Plaintiff's claim of error fails.

**5.**

Plaintiff next argues that the ALJ erred in several respects when he discounted her credibility. (ECF No. 12, PageID.752–56.) The Court disagrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 Fed. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

10

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted)..

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.*; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony" (internal quotation marks omitted)). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In discounting Plaintiff's credibility, the ALJ noted that Plaintiff's trigeminal neuralgia was generally under control with medication, and that through the date last insured,

11

Plaintiff sought minimal treatment for abdominal pain after the operation in January 2005 and prematurely ended her physical therapy. The ALJ also noted Plaintiff was able to complete a wide range of activities of daily living, including making jelly and taking her daughter to ride horses. All this, the ALJ concluded, was inconsistent with Plaintiff's allegations of severe incapacitating pain. (Tr. 31–32.) As noted above, the ALJ's reasons for discounting Plaintiff's credibility are supported by substantial evidence.

Plaintiff argues that the ALJ erred in relying on her activities of daily living to discount her credibility, noting that the Sixth Circuit has stated that "somewhat minimal daily functions are not comparable to typical work activities." (ECF No. 12, PageID.754 (citing *Rogers*, 486 F.3d at 248).) Plaintiff, however, takes the ALJ's discussion of Plaintiff's activities of daily living out of context. Here, the ALJ based the RFC finding on the objective medical record, and the discussion of Plaintiff's daily activities was focused on the decision to discount Plaintiff's subjective statements. The ALJ did not err in citing this evidence in such a context. *See Keeton v. Comm'r of Soc., Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing 20 C.F.R. § 404.1572 and quoting *Walters*, 127 F.3d at 532) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, an ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.") (internal quotations omitted). Accordingly, the ALJ did not err in citing Plaintiff's activities of daily living in discounting her statements that she is far more limited.

Plaintiff further argues that the ALJ's credibility analysis is flawed because the "ALJ has not addressed any of the other factors indicated by SSR 96–7p." (ECF No. 12, PageID.755.) As the CFR and associated Social Security Rulings direct in addition to the objective evidence, the ALJ must consider the following factors when assessing the credibility of a claimant's statements regarding her symptoms:

>1. The individual's daily activities;
>
>2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
>3. Factors that precipitate and aggravate the symptoms;
>
>4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
>5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
>6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
>7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *3 (1996). Under SSR 96–7p, the ALJ is required to "consider" the seven-listed factors, but there is no requirement that the ALJ discuss every factor. *See White*, 572 F.3d at 287; *see also Parsons v. Astrue*, No. 1:09–cv–2695, 2011 WL 887618, at *6 (N.D. Ohio Feb. 17, 2011) ("The ALJ conducted the appropriate analysis pursuant to SSR 96–7p, although not articulated in the manner Plaintiff would prefer."); *Coleman v. Astrue*, No. 2:09–cv–36, 2010 WL 4094299, at *15 (M.D. Tenn. Oct.18, 2010) ("There is no requirement that the ALJ expressly discuss each listed factor."); *Roberts v. Astrue*, No. 1:09–cv–1518, 2010 WL 2342492, at *11 (N.D. Ohio June 9, 2010) ("[T]he ALJ need not analyze all seven factors contained in SSR 96–7p to comply with the regulations.").

The ALJ's discussion of Plaintiff's credibility began with a recitation of the relevant regulations and social security rulings, including SSR 96–7p. (Tr. 24.) The ALJ's reference to SSR 96–7p indicates that he "considered" all the ruling's factors. *Brown v. Comm'r of Soc. Sec.*, No. 1:10–cv–705, 2012 WL 951556, at *5 (W.D. Mich. Feb 27, 2012). While the ALJ was not required

13

to explicitly discuss each of the above mentioned factors, the ALJ did discuss many of them. The ALJ discussed Plaintiff's daily activities, the location of the pain in her face and abdomen, factors that Plaintiff said aggravate her pain, the side effects of her medication, and her treatment using physical therapy. (Tr. 25.) Plaintiff has thus shown no error, and her claim fails.

**6.**

Plaintiff finally claims that the ALJ erred in his treatment of the opinions from Plaintiff's treating physicians. The Court is not persuaded.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

On September 24, 2012, Dr. Mosher filled out a form asking his opinion regarding Plaintiff's limitations before her date last insured of June 30, 2008. (Tr. 590–98.) An identical form was filled out by Dr. Marc Feeley on March 19, 2013. (Tr. 579–87.) On the form, the doctors opined that Plaintiff was far more limited than the ALJ determined. Specifically, the two doctors stated that Plaintiff was incapable of performing even sedentary work. (Tr. 581, 592.) The doctors further opined that Plaintiff could only sit on a sustained basis for three hours in an eight-hour workday, and stand or walk for less than one hour in the workday. Plaintiff further was limited to occasionally lifting five-pound weights. (Tr. 583, 596.) Dr. Mosher also stated that Plaintiff required complete freedom to frequently rest. (Tr. 587.) The ALJ gave the two opinions "minimal" and "little" weight. (Tr. 32–33.) For both opinions, the ALJ noted that "the medical evidence of record shows that claimant was still able to perform her activities of daily living with minimal limitations, despite her limitations." (Tr. 32–33.)

Substantial evidence supports the ALJ's reasons for discounting the doctors' opinions. Plaintiff reported that since her onset date, she was self employed. (Tr. 49.) Plaintiff stated that in such employment she was required to perform heavy physical labor and to sit for long periods. (Tr. 481.) During the busy season of Plaintiff's business, Plaintiff reported she stood for long periods, and performed moderate labor as a house cleaner. (Tr. 489.) She stated she used a

15

treadmill for 45 to 90 minutes a day, and was able to perform a limited amount of horseback riding. (Tr. 416, 679.) This evidence is inconsistent with the extreme limitations the doctors recommended. Plaintiff's reliance on *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011), is misplaced. In that decision, the court held that a claimant's "ability to do certain activities . . . does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding." *Id.* at 939. In the instant case, Plaintiff's own words support the ALJ's finding. Accordingly, the ALJ gave good reasons, supported by substantial evidence, for discounting the doctors' opinions. Plaintiff's claim of error fails.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated:  February 2, 2016                          /s/ Gordon J. Quist            
                                                 GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE